Rudgear v. United States Leather Co.

---

## A. Rudgear et al. v. United States Leather Company et al.

1. EVIDENCE—*Secondary Evidence of the Contents of Destroyed Checks.*—Where original checks have been destroyed while in the hands of a party who had paid no attention to an order to produce them, slight evidence of the contents of the destroyed checks will suffice. Copies of such checks are admissible in evidence.

Creditor's Bill.—Error to the Superior Court of Cook County; the Hon. JESSE HOLDOM, Judge presiding. Heard in the Branch Appellate Court at the October term, 1902. Affirmed. Opinion filed June 5, 1903.

Defendants in error obtained judgments against the Columbian Leather Company upon which executions were issued and returned *nulla bona.* Thereupon defendants in error filed a creditor's bill making plaintiffs in error, among others, parties defendant, alleging *inter alia* that the company has put property out of its hands with intent to defraud its creditors, that moneys, property and credits of the company have been transferred to plaintiffs in error and others, and that a receiver ought to be appointed. The bill prays for discovery and asks that after exhausting the assets, shareholders liable on unpaid subscriptions may be decreed to pay their *pro rata* share of the debts to the extent of the unpaid part of their stock.

The master to whom the cause was referred, found that plaintiff in error Rudgear, an uncle of the other plaintiffs in error, knew all the circumstances and acted for and advised his nieces; that Celeste, one of said nieces, became president

and that Eleanor became secretary and treasurer of the company after their father's death; that they made an agreement with the creditors to pay the debts *pro rata;* that this agreement was violated; that Rudgear received a check for $1,603.67 in violation of that agreement; that by his indorsement of that check he became instrumental in drawing the money on it; that there was a conspiracy between him and his said nieces in which he was the guiding spirit, to defeat the claims of complainants, and that he should be held liable for the amount of that check and interest; that the two nieces, Mrs. Celeste Haskins and Mrs. Eleanor C. Turnes, should be held liable for the amount· received by them upon a check for $4,635.09 with interest, and the master recommends, in view of their entire failure to show what was done with the other assets, that they be required to pay the receiver the further sum of $11,535.64, being the balance of the assets of the corporation as shown by an inventory taken after the death of Kurzenknabe.

Exceptions were taken to the master's report. The court, after hearing, entered the decree now complained of. It finds, *inter alia,* that none of the defendants are liable for unpaid subscriptions to the capital stock; that there were assets of the corporation in value exceeding $16,000, and " net assets exceeding $6,000," which have been wholly unaccounted for by the said defendants, and that Rudgear, Mrs. Haskins and Mrs. Turnes appropriated a sum in excess of $1,600 to their own use, which, with interest, a total of $1,890, should be paid by them to the receiver, with costs, and it is decreed accordingly. The bill was dismissed as to the other defendants.

Counsel for plaintiffs in error assign numerous errors, and counsel for defendants in error ask for a reversal on cross-errors assigned, and that a decree may be entered against all of the plaintiffs in error for the full amount— about $2,000—claimed by defendants in error on their judgments.

W. A. SHERIDAN, attorney for plaintiff in error.

ASHCRAFT & ASHCRAFT, attorneys for defendants in error; E. M. ASHCRAFT, of counsel.

MR. JUSTICE FREEMAN delivered the opinion of the court.

The defendant company, which this proceeding seeks to wind up, was organized in 1896, with a capital of $25,000. Its stock was subscribed for by three persons, William Kurzenknabe taking the largest amount. Apparently he then owned or subsequently acquired the stock subscribed by the other two who joined with him in the formation of the corporation. Kurzenknabe carried on the business until May 21, 1898, when he committed suicide. At the time of his death the company was indebted to a number of parties, among them the defendants in error. Kurzenknabe had carried on the business in the corporate name, but without much reference to corporate forms. At the time of his death, the corporation seems to have been without officers or records, Kurzenknabe being sole manager of the business, and the owner of all the capital stock. He left a letter addressed to two of his daughters, who are plaintiffs in error. They were then both unmarried. In that letter he suggested that they wind up the business with the aid of a bookkeeper then in his employ, and that after paying the debts they divide the surplus, if any, between them. He left his certificates of stock indorsed in blank with directions that said certificates be delivered to the said daughters. The two young women accepted the stock and proceeded to take charge of the business. Under the direction of an attorney a meeting of stockholders was held. The daughter Celeste was elected president, the daughter Eleanor vice-president and the bookkeeper secretary. An agreement was soon after made with the attorneys representing defendants in error as creditors, that the assets should be converted into money to be applied *pro rata* in payment of creditors, under the direction of the bookkeeper, in whom the creditors appeared to have confidence; that the money should be deposited, and that all checks should require the signature of the bookkeeper as secretary of the company, as well as that of the president. This arrange-

ment was continued until the advent of appellant Rudgear, an uncle of the two young women, who came on from California, where he was engaged in business. It is claimed by defendants in error, and the master so found, that Rudgear practically took charge of the business. Shortly thereafter the bookkeeper and secretary, upon his alleged refusal to sign checks contrary to the agreement with creditors, was informed that he was no longer wanted, and resigned. His place was filled by the appointment of plaintiff in error Eleanor, as secretary and treasurer. The evidence is unsatisfactory as to what was done with a large part of the assets. An inventory taken soon after Kurzenknabe's death, showed assets of an estimated value of $17,574.40. July 14, 1898, as stated by counsel for plaintiffs in error, " the business was closed out so far as Chicago was concerned." On that day Eleanor was married, and the money of the company in bank, amounting to $6,255.26, was drawn out upon two checks, both of them signed by " Columbian Leather Co., E. C. Kurzenknabe, secretary and treasurer," and countersigned by " C. Kurzenknabe, Pres." The first check was for $1,603.67, payable to the order of " A. Rudgear," and was indorsed by Rudgear and by " C. Kurzenknabe, Pres." The other check was for $4,635.09, payable to " Currency," and was indorsed by " C. Kurzenknabe, Pres." With this money Rudgear and Celeste left the same day for California, where Rudgear resided. Before leaving the city Rudgear called on an attorney who represented the company and sought to be advised how to dispose of the fixtures without paying the landlord his rent.

The books of the company were thereafter stored for a time in a building owned by the husband of Eleanor, and were subsequently sent to Celeste in California. There they remained apparently in charge of Rudgear until consumed by fire more than a year thereafter. Rudgear seems to have carried on for Celeste whatever business remained to be done in the way of collecting outstanding accounts of the Leather Company.

What application was made of this money taken to Cal-

ifornia does not appear.    Celeste testifies, " I think there
was a *pro rata* given to the creditors, but I can not exactly
tell you.    I had lots of bills, but I can not remember the
different bills."    If the money was paid out to creditors,
it was the duty of plaintiffs in error to present evidence of
such disposition of it.    This they failed to do.    Celeste
testifies that about June 25, 1898, she countersigned a
check in favor of Rudgear which was cashed by the
Leather Company and the money turned over to Rudgear,
in payment of money he had advanced to the company.
She says its amount was $1,106.67.    She evidently had in
mind the check for $1,603.67 cashed July 14, 1898.    She
subsequently made an affidavit which was filed with a
motion to re-open the taking of testimony, in which she
says she was mistaken as to the amount, and that it was
not for money advanced to the company, but was drawn
to pay a personal debt of her father's to Rudgear for
money advanced long before.    It is claimed that the check
was returned by Rudgear, the debt having been paid to
him by his sister, the widow of Kurzenknabe, and mother
of the other two plaintiffs in error.

A petition was filed in behalf of Rudgear while the
cause was pending on exceptions to the master's report, in
which he sought to have the master directed to re-open the
hearing for further testimony in behalf of petitioner.
The petition is supported by affidavits to the effect that
the check for $1,603.67 drawn to his order by the Colum-
bian Leather Company was so drawn by a mistake, and
that he indorsed it and turned it back to the company.
No explanation is made as to what became of the money.
The court refused to re-open the taking of testimony and
we think, rightly.    Plaintiffs in error had filed their an-
swers to the bill of complaint duly signed, and the record
shows that Rudgear accepted service of a notice to pro-
duce the books and papers before the master.    This was
before their destruction by fire, but they were not pro-
duced.    All the parties had full opportunity to make
defense.    It was too late after an utter disregard of the

notices served, and after an apparently willful failure to even attempt to explain his connection with, or knowledge of the disappearance of the assets of the Leather Company, for Rudgear to come in with a new form of defense after a finding against him, without any sufficient excuse for his lack of attention when diligence might have availed him. It appears from affidavits in support of his petition that the check referred to was drawn to his order for the purpose and with the intention on the part of his said nieces of paying him out of the assets of the company, not a debt of the company's, but a personal debt due from his deceased brother-in-law. The check was returned, according to his statement, not because he had no right to it under any circumstances, but because the alleged debt had meanwhile been paid by his sister. The disappearance of assets apparently with his knowledge and connivance he makes no effort to account for. The one patent fact undisputed is that over $6,000 was taken from the bank and carried to California with the niece who accompanied him, and thereafter this money disappears, while he continues to attend to the collection of the company's accounts from that state, to which the closing up of the business had been transferred. No reason is given for drawing out that amount in currency to expose it to the danger of loss upon so long a journey, and no reason appears for removing it at all, if good faith was intended to the creditors. These creditors remain unpaid. Rudgear is the one person who, by his business experience, his age and relationship to the other plaintiffs in error, young and inexperienced women, and by the fact that he took an active part in the disposition of the assets, was capable of explaining, if any one could honestly explain, the transactions by which over $6,000 of money out of which creditors were entitled to payment has disappeared. This he makes no pretense of doing. We are inclined to the opinion that under the evidence tending to show his agency and knowledge the decree might have found him liable in a larger sum. The burden of proof of innocence was clearly on him, and he has failed to take it up.

Rudgear v. United States Leather Co.

It is urged that there was error in admitting copies of the checks by which the money of the company was drawn out of the bank. At the time the deposition of Mrs. Haskins, the president of the Leather Company, was taken in San Francisco, the copies of these checks were produced. When the copies were introduced in evidence before the master no objection to their introduction appears from the abstract to have been made. The abstract is prepared by plaintiffs in error, and we must presume that it shows such objections and exceptions as have been preserved in the record. In her affidavit in support of the petition for a re-opening of the case to take further testimony, the president of the company states that she drew, in July, 1898, a check for the same amount to the same payee, Rudgear, as shown in the first of the checks, copies of which were so introduced. This affidavit, while not filed as part of the evidence in the case, is yet in the record, and may be presumed to show what the affiant would testify to if again placed on the stand. The originals of these checks were destroyed in the hands of plaintiffs in error. Notice to produce them while they were still in existence had been disobeyed. The fact that the funds in bank were drawn out on checks, accurately reproduced in the copies introduced in evidence, was competent. These copies were the best remaining evidence when proved as they were, of the existence and contents of the originals. There was evidence undisputed that the originals of these copies were actually paid by the bank, and no question is raised by plaintiffs in error of the propriety of such payment on the part of the bank. The original checks having been destroyed while in the hands of plaintiffs in error, who had paid no attention to an order to produce them, slight evidence of the contents of the destroyed checks will suffice. Anderson v. Irwin, 101 Ill. 411; Tanton v. Keller, 167 Ill. 129. We are of opinion that the copies were admissible in evidence.

We find no error in the refusal of the trial court to hold any of the defendants liable upon unpaid stock. The evidence does not, in our opinion, warrant such holding.

It is plain that plaintiffs in error have not accounted for the assets which came into their hands. There is evidence that some bills were paid, but what, or to what extent, is not shown. The chancellor has given the plaintiffs in error the full benefit of any doubts which may exist. Upon full consideration we are not disposed to disturb the decree, although the contention of defendants in error that they were entitled to the full amount of their judgments seems to us not without force. The difference, however, is small, and the decree which gives plaintiffs in error the benefit of all legitimate doubts is, we think, founded on equitable considerations, and does substantial justice. It is therefore affirmed.